McGREGOR W. SCOTT
United States Attorney
PAUL A. HEMESATH
AMANDA BECK
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America



**FILED**

NOV 0 1 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:18-CR-210 TLN |
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: November 1, 2018 |
| CODY BOYD, | TIME: 2:00 p.m. |
| Defendant. | COURT: Hon. Troy L. Nunley |

## I.   **INTRODUCTION**

### A.   **Scope of Agreement**

The Information in this case charges the defendant with one count of violating 21 U.S.C. § 846, 841(a)(1) – Conspiracy to Distribute and to Possess with Intent to Distribute Testosterone, a Schedule III Controlled Substance. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.   **Court Not a Party**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the

1  discretion of the Court, and the Court may take into consideration any and all facts and circumstances

2  concerning the criminal activities of defendant, including activities that are not charged in the

3  Information.  The Court is under no obligation to accept any recommendations made by the government,

4  and the Court may in its discretion impose any sentence it deems appropriate up to and including the

5  statutory maximum stated in this plea agreement.

6       If the Court should impose any sentence up to the maximum established by the statute, the

7  defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all

8  of the obligations under this plea agreement.  The defendant understands that neither the prosecutor,

9  defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will

10  receive.

11  ## II.      **DEFENDANT'S OBLIGATIONS**

12  ### A.    **Guilty Plea**

13       The defendant will plead guilty to the count in the Information, a violation of 21 U.S.C. § 846,

14  841(a)(1) – Conspiracy to Distribute and to Possess with Intent to Distribute Testosterone, a Schedule III

15  Controlled Substance.  The defendant agrees that he is in fact guilty of this charge and that the facts set

16  forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

17       The defendant agrees that this plea agreement will be filed with the Court and become a part of

18  the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his

19  plea should the Court not follow the government's sentencing recommendations.

20       The defendant agrees that the statements he makes in signing this Agreement, including the

21  factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by

22  the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a

23  guilty plea pursuant to this Agreement.  The defendant waives any rights under Rule 11(f) of the Federal

24  Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence to the extent that these rules

25  are inconsistent with this paragraph or with this Agreement generally.

26  ### B.    **Sentencing Recommendation**

27       The defendant and his counsel may use the provisions of 18 U.S.C. § 3553(a) to recommend

28  whatever sentence they deem appropriate.

C.     **Special Assessment**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.  If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

D.     **Defendant's Violation of Plea Agreement or Withdrawal of Plea**

If the defendant, violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government.  The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein.  One way a defendant violates the plea agreement is to commit any crime or to provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete.  Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement.  Whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the rights: (1) to prosecute the defendant on the count to which he pleaded guilty; and (2) to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice.  The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph.  Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions.  The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of

1  limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

2  Amendment to any counts that were not time-barred as of the date of this plea agreement.

3      In addition: (1) all statements made by the defendant to the government or other designated law

4  enforcement agents, and any testimony given by the defendant before a grand jury or other tribunal,

5  whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or

6  administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

7  claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal

8  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that statements made by

9  the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

10 By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

11 **E.    Forfeiture**

12     The defendant agrees to forfeit to the United States voluntarily and immediately all of his right

13 title and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 982 and 21 U.S.C. §

14 853.  Those assets include, but are not limited to, the following:

15

16      1.    Approximately $30,000.00 in U.S. Currency seized from a Wells Fargo Safe
            Deposit Box,

17
18      2.    Approximately $20,000.00 in U.S. Currency seized from a Wells Fargo Safe
            Deposit Box,

19      3.    Approximately $4,026.07 seized from Wells Fargo Bank Account Number
            9321568629,
20

21      4.    Approximately $1,428.40 seized from Wells Fargo Bank Account Number
            6581291769,
22

23      5.    2016 Ford Mustang Shelby GT350, VIN: 1FA6P8JZ0G5526195, License
            Number: 8CGD006,

24      6.    Approximately $20,000.00 in U.S. Currency,

25      7.    Approximately $6,652.00 in U.S. Currency,
26
        8.    Approximately $160.00 in U.S. Currency,
27

28      9.    Approximately $11,764.75 in U.S. Currency seized from Twenty-Seven Parcels,

10.    Approximately 1.9130219 Bitcoins, and

11.    Approximately .32194491 Bitcoins.

The defendant agrees that the listed assets constitute proceeds traceable to violations of 21 U.S.C. §§ 841(a)(1) and 846.

The defendant agrees to fully assist the government in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States.  The defendant shall not sell, transfer, convey, devalue, or otherwise dispose of any of his assets, including but not limited to, the above-listed assets.

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated.  The defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets.  The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding.  The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions.

The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

### III.    THE GOVERNMENT'S OBLIGATIONS

**A.    Recommendations**

1.    Incarceration Range

The government will recommend that the defendant be sentenced to no more than 66 months in prison.

2.    Possessing a Dangerous Weapon

The government will recommend that the defendant receive an offense level enhancement for

1  possessing a dangerous weapon during his commission of the offense. *See* U.S.S.G. § 2D1.1(b)(1).

2                  3.      Distributing a Controlled Substance with a Computer

3         The government will recommend that the defendant receive an offense level enhancement for

4  using a computer to distribute a controlled substance. *See* U.S.S.G. § 2D1.1(b)(7).

5                  4.      Maintaining a Premises

6         The government will recommend that the defendant receive an offense level enhancement for

7  maintaining a premises for manufacturing or distributing a controlled substance. *See* U.S.S.G. §

8  2D1.1(b)(12).

9                  5.      Leadership

10         The government will recommend that the defendant receive an offense level enhancement for his

11  leadership role in the offense. *See* U.S.S.G. § 3B1.1(c).

12                  6.      Acceptance of responsibility

13         The government will recommend a two-level reduction (if the offense level is less than 16) or a

14  three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if

15  he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1.

16  This includes the defendant meeting with and assisting the probation officer in the preparation of the

17  pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in

18  conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the

19  preparation of the pre-sentence report or during the sentencing proceeding.

20        **B.**    **Use of Information for Sentencing**

21         The government is free to provide full and accurate information to the Court and the United

22  States Probation Office ("Probation"), including answering any inquiries made by the Court and/or

23  Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney,

24  Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement

25  bars the government from defending on appeal or collateral review any sentence that the Court may

26  impose.

27                         **IV.**     **ELEMENTS OF THE OFFENSE**

28         At a trial, the government would have to prove beyond a reasonable doubt the following

elements of the offense – Conspiracy to Distribute and to Possess with Intent to Distribute Testosterone, a Schedule III Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1), 846 – to which the defendant is pleading guilty:

1.  Between on or about May 27, 2017, and continuing through on or about March 26, 2018, there was an agreement between two or more people to distribute or to possess with the intent to distribute testosterone, a Schedule III controlled substance; and

2.  The defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

The defendant fully understands the nature and elements of the crime charged in the Information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.    MAXIMUM SENTENCE

### A.    Maximum penalty

The maximum sentence that the Court can impose is 10 years of incarceration, a fine of $500,000, a lifetime period of supervised release, and a special assessment of $100.  In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.   By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which the defendant is pleading guilty.  The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B.    Violations of Supervised Release

The defendant understands that, if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two years of additional imprisonment per revocation.

## VI.    SENTENCING DETERMINATION

### A.    Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and

1   must take them into account when determining a final sentence.  The defendant understands that the

2   Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the

3   Sentencing Guidelines and must take them into account when determining a final sentence.  The

4   defendant further understands that the Court will consider whether there is a basis for departure from the

5   guideline sentencing range (either above or below the guideline sentencing range) because there exists

6   an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into

7   consideration by the Sentencing Commission in formulating the Guidelines.  The defendant further

8   understands that the Court, after consultation and consideration of the Sentencing Guidelines, must

9   impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

10                              **VII.    WAIVERS**

11       **A.    Waiver of Constitutional Rights**

12           The defendant understands that by pleading guilty he is waiving the following constitutional

13   rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

14   be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to

15   testify on his behalf; (e) to confront and cross-examine witnesses against him; (f) not to be compelled to

16   incriminate himself; and (g) to testify and present evidence.

17       **B.    Waiver of Appeal and Collateral Attack**

18           The defendant understands that the law gives the defendant a right to appeal his guilty plea,

19   conviction, and sentence.  The defendant agrees as part of his plea, however, to give up the right to

20   appeal any aspect of the guilty plea, conviction, or sentence imposed in this case.  The defendant

21   specifically gives up the right to appeal any order of restitution the Court may impose.

22           Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if

23   one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

24   statutory maximum; and/or (2) the government appeals the sentence in the case.  The defendant

25   understands that these two circumstances occur infrequently and that, in all other cases, this Agreement

26   constitutes a complete waiver of all appellate rights.

27           In addition, regardless of the sentence the defendant receives, the defendant also gives up any

28   right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any

1  aspect of the guilty plea, conviction, or sentence imposed in this case.

2        If the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set

3  aside his sentence on the count to which he is pleading guilty, the government shall have the rights set

4  forth in paragraph II.D (Defendant's Violation of Plea Agreement) herein.

5                    VIII.      **ENTIRE PLEA AGREEMENT**

6        Other than this plea agreement, no agreement, understanding, promise, or condition between the

7  government and the defendant exists, nor will such agreement, understanding, promise, or condition

8  exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and

9  counsel for the United States.

10                   IX.      **APPROVALS AND SIGNATURES**

11       **A.**    **Defense Counsel**

12       I have read this plea agreement and have discussed it fully with my client.  The plea agreement

13  accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to

14  plead guilty as set forth in this plea agreement.

15

16  Dated:    11/1/18

      ALEXANDRA NEGIN
17    Counsel for Defendant

18

19

20

21  //

22

23

24  //

25

26

27

28  //

PLEA AGREEMENT                              9

**B.**   **Defendant**

I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case.  No other promises or inducements have been made to me, other than those contained in this plea agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.  Finally, I am satisfied with the representation of my attorney in this case.

Dated: ___11/1/18___                              _____

                                                                CODY BOYD, Defendant

**C.**   **Attorney for the United States**

I accept and agree to this plea agreement on behalf of the government.

Dated: November 1, 2018                         McGREGOR W. SCOTT
                                                                United States Attorney

                                                        By: _____
                                                                AMANDA BECK
                                                                Assistant United States Attorney

**EXHIBIT A**
**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

In December 2017, the Department of Homeland Security began monitoring PhantomLabs, an online storefront on Dream Market, a dark web sales site. Agents quickly identified the defendant, Cody Michael Williams Boyd, as the owner and operator of this store, which sold – among other things:

- Anabolic steroids – including testosterone, deca durabolin, oxymetholone (a.k.a. Anadrol), oxandrolone (a.k.a. Anavar), methandrostenolone (a.k.a. Dianabol), and boldenone (a.k.a. Equipoise), all Schedule III substances;

- Cocaine, a Schedule II substance, in quantities ranging from 1 gram to 28 grams;

- Xanax, a Schedule IV substance, in quantities ranging from 10 to 1,000 pills; and

- Various marijuana strains in quantities ranging from half an ounce to multiple pounds.

The agents' research showed that Phantom Labs had joined Dream Market on May 27, 2017. Less than ten months later, on March 23, 2018, it had 620 customer reviews presenting an average satisfaction rating of 4.9 on a five-point scale.

During their subsequent investigation, agents found that – between December 1, 2017, and February 28, 2018, the defendant mailed or received more than 160 packages through the United States Postal Service. Search warrants executed on some of these packages showed that they contained cash, marijuana, vials of liquid steroids, and other controlled substances, sometimes shipped from China. Agents found that the marijuana the defendant supplied was frequently of a multiple pound quantity. Agents later reviewed the defendant's PhantomLabs Instagram account and noted one post in which he claimed to be making 1,250 steroid vials. On about February 6, 2018, an undercover agent placed his own PhantomLabs order for 28 grams of cocaine. The agent paid in Bitcoin, and his order, shipped from a third party, arrived on February 26, 2018.

On March 26, 2018, agents executed search warrants at the defendant's home and business. In total, agents found more than 100 pounds of steroids – at least 1,500 vials of liquid steroids about 10 pounds of powder steroids. They also found about 20 pounds of marijuana and about 50 Xanax pills.

1  Additionally, in the defendant's home, agents found more than $26,500 in cash, an AR-15-style rifle
2  registered to him, more than 10 fraudulent driver licenses bearing photos of the defendant and false
3  names, various items bearing the PhantomLabs brand logo, packets of suspected butane honey oil, and
4  an electronic money counter. Agents also found a Sig Sauer handgun in the defendant's truck. At the
5  defendant's business unit, agents found a digital scale, about 50 U.S. Postal Service parcels, and a folder
6  containing indicia for the defendant and Team Phantom.

7  The defendant made a Mirandized statement to officers. He said that he had begun selling
8  steroids on Facebook and now sold steroids, marijuana, and Xanax through his PhantomLabs storefront,
9  which operated on the Dream Market. The defendant said that he imported Chinese precursors needed
10  to create steroids and then brewed, sold, and packaged the products for shipment. He estimated that his
11  narcotics sales had brought in about $150,000 in earnings, typically received as Bitcoin, a Western
12  Union transfer, or cash sent through the mail. The defendant said he had no other source of income. He
13  added that he had at least two employees – a man in New York City who facilitated steroid sales and a
14  second person who worked locally to package controlled substances sent in the mail.

15  The defendant consented to a search of his cellular phone, which documented Google searches
16  on how to launder money, create off-shore bank accounts, and brew steroids. His phone also contained
17  photographs relating to his business. As part of their investigation, agents seized the defendant's Ford
18  Shelby GT 350, which he valued at about $120,000.

19  **Affirmation by Defendant**

20  I have read this "Exhibit A, Factual Basis for Plea." I understand the contents fully and have
21  discussed them with my attorney. I voluntarily agree that these facts are true and correct and shall serve
22  as the factual basis for my guilty plea.

23

24  Dated: _____          _____
25                                              CODY BOYD, Defendant
26
27
28

PLEA AGREEMENT                    A-2