McGREGOR W. SCOTT
United States Attorney
PAUL HEMESATH
GRANT B. RABENN
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>            v.<br><br>CODY BOYD,<br><br>                    Defendant. | CASE NO. 2:18-CR-0210 TLN<br><br>GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE TO FORMAL OBJECTIONS |

The United States of America opposes defendant Cody Boyd's objections to the PSR and his request for a downward variance under 18 U.S.C. § 3553(a).

I.      **DEFENDANT'S OBJECTION TO FIREARMS ENHANCEMENT UNDER § 2D1.1(b)(1)**

Boyd argues it is clearly improbable that an AR-15 rifle, found at his home, and a Sig Sauer handgun, found in his truck, were connected with his online drug sales. Boyd suggests that—because he did not have to meet online buyers in person and because he conducted some of his business at a location that was not his home—he must not have needed those firearms to conduct his drug business. He therefore concludes that those guns were clearly not connected to his offense.

The United States Probation Office rejected Boyd's reasoning saying that the AR-15 rifle was found in home along with steroids, marijuana, Xanax, and $26,500 in cash.

The Court should adopt the Probation Officer's reasoning because a drug dealer's motivations

for carrying guns goes beyond the need for protection while selling drugs to customers. Drug dealers also have to protect their proceeds (in this case $26,500 in cash, found in Boyd's home) and their supply (marijuana, Xanax, and steroids—also found in his home).

In sum, the argument that there was no reason for Boyd—as a drug dealer—to carry weapons is not logical or supported by the facts. In fact, there many reasons for a person holding cash and drugs to possess guns in connection with the offense. The applicable standard for the 2-level enhancement is that possession is enough, unless it is clearly improbable that weapon was connected with the offense. Here, Boyd cannot show that the *two* weapons found were not so connected, therefore his objection should be overruled.

## II. DEFENDANT'S ARGUMENT FOR A DOWNWARD VARIANCE UNDER 18 U.S.C. § 3553(A) FOR UNWARRANTED SENTENCING DISPARITY

Boyd also argues that the Court should vary downward because other steroid defendants have received lower sentences nationally. Boyd provides spreadsheets and limited court records (through no fault of his own, they lack PSRs) in support of his position that a 78-month, or a 62-month, sentence would be disproportionally high in comparison to other defendants.

It is impossible, however, to meaningfully compare any of those cases with Boyd's conduct, which exhibits a unique combination of a minor (but significant) criminal history, mass marketing on the darkweb, a combination of drug sales (steroids, cocaine, Xanax, marijuana), the possession of guns, the maintenance of a place, and a leadership enhancement. These variables are, in fact, the purpose of applying standardized guidelines: so that courts may begin their analysis from a normalized baseline, even when individual circumstances vary.

In response to the suggestion that courts must engage in nationwide comparisons difficult-to-compare cases, the Ninth Circuit held: "A district court need not, and, as a practical matter cannot compare a proposed sentence to the sentence of every criminal defendant who has ever been sentenced before." *United States v. Treadwell*, 593 F.3d 990, 1012. The court went on to observe, "Too many factors dictate the exercise of sound sentencing discretion in a particular case to make the inquiry [the defendant] urges helpful or even feasible."

The folly of casual comparisons to other cases is laid bare through a simple question: What

would be the applicable Guidelines had Boyd not possessed guns and employed other persons to work in his operation? The answer is that his Guidelines would have fallen by six-levels (two for the guns, two for leadership, and two for likely qualification for Safety Valve), which would have resulted in a range of 41-51 months. The government argues that the possession of guns in and the leadership of others in connection with a drug offense carry consequences, which are naturally and fairly expressed in the Guidelines, which is the basis for the government's recommendation.

### III.   CONCLUSION

The government asks the Court to fairly apply the Sentencing Guideline and the relevant § 3553(a) factors. That other courts found some defendants less culpable in some cases is simply not a meaningful point when Boyd's own data shows that other defendants received roughly equal, or in some cases, much more imprisonment for steroid-related crimes (e.g., Baumann, Goodwin, Root, Caplinger, Pasternak, etc., cited in Boyd's materials.). And in any event, the *Treadwell* case, cited above, holds that sentencing courts cannot be expected to perform the infeasible task of comparing every case to every other case.[1]

For the foregoing reasons, the government asks the Court to sentence Boyd to 62 months imprisonment, a sentence substantially below the low-end of the Guidelines recommendations, which resulted in a range of 78-97 months.

Dated: February 14, 2020                    McGREGOR W. SCOTT
                                             United States Attorney

                                        By: /s/ PAUL HEMESATH
                                             PAUL HEMESATH
                                             Assistant United States Attorney

---

[1] This is especially true because departures resulting from a defendant's 5K efforts are often obscured from the public record.

GOVERNMENT'S SENTENCING MEMO AND RESPONSE     3
TO FORMAL OBJECTIONS