HEATHER E. WILLIAMS, #122664
Federal Defender
LEXI NEGIN, #250376
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA  95814
Telephone: (916) 498-5700

Attorney for Defendant
CODY WILLIAMS BOYD

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:18-cr-210 TLN |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S MEMORANDUM IN AID OF |
| | ) | SENTENCING |
| v. | ) | |
| | ) | |
| CODY WILLIAMS BOYD, | ) | Dates:  February 20, 2020 |
| | ) | Time:   9:30 a.m. |
| Defendant. | ) | Judge:  Hon. Troy L. Nunley |
| | ) | |

Mr. Cody Boyd, by and through undersigned counsel, respectfully requests this Honorable Court to sentence him to five years of probation for the reasons set forth in this Memorandum in Aid of Sentencing.

Mr. Boyd additionally requests leave to file this memorandum one day late.  The government graciously has no objection to the late-filing.  Counsel just completed a 6 day trial on February 12th.  The trial Court requested immediate post-trial motions on February 13th and thus undersigned counsel was delayed in the preparation of this memorandum.  Rather than request a further continuance of the sentencing, counsel apologizes for the tardiness of this filing and requests that the Court allow the sentencing to go forward as scheduled and that the Court allow this memorandum to be filed one day late.  If the Court wishes more time to consider the memoranda filed, the parties can reschedule sentencing at a time convenient to the Court.

Sentencing Memo                                      -1-

## NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT:

As a kid, Cody was tall and very skinny. He was awkward in his body. He was bullied by his abusive father who finally ended up in prison and Cody has no relationship with him. The abuse by his father when he was a child was followed by being bullied at school. In his teenage years Cody began to work out to try and get bigger so he would not be bullied or picked on. He spent a lot of time in the gym becoming a "gym rat." The gym was the center of his life. It's where he excelled and made friends. At the gym, he was exposed to steroids and saw the kinds of results steroids produced. Desiring to look his best and get bigger, he started doing steroids himself. Cody was buying steroids on the internet. The steroids and lifting weights worked wonders for Cody. He got bigger and starting getting positive attention from women and men. Noticing the improvement in his look other men at the gym started asking him about how he obtained steroids. The more he researched, he realized he could manufacture the steroids himself.

Cody went about his steroid manufacturing in entrepreneurial style. He branded a name, Phantom Labs, that he registered with the California business bureau. He rented a space for the steroids manufacturing, he had business cards, and used his car as a sort of mobile billboard. He boasted on social media about his successful business and upcoming products. Aside from the fact that he ran the business on the dark web, Cody was going about this business in an open manner as if it were legal. He knew it was illegal, as evidenced by his ridiculous social media comments about his business and essentially daring law enforcement to catch him. Being "bragadocious" is central to the steroids culture and so he took on that social media persona that has zero resemblance to the true person he is. Cody was extremely successful at this business and made a lot of money for young man. The money allowed him to go on vacations, have a specialized muscle car worth $100,000. The desire to make easy money led him to middleman the sale of other drugs aside from steroids on the dark web as well. He was 23 years old when he was arrested.

As soon as he was arrested, all of his ridiculous bravado was gone. He cooperated with authorities explaining all of the aspects of his business. He gave law enforcement consent to

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

assume his online identity and gave them all of his passwords and other information. The brash

social media person that he took on was totally gone and a scared young man was left. He

desired to plead guilty quickly and pre-plea delays in this case were due to the lawyers'

schedules. Since the day he was arrested he has accepted responsibility. It was a wake-up call

for him that came at the right time.

Cody has been truly humbled by this experience. He has been on pretrial release since

his arrest nearly two years ago. His performance on pretrial release has been exceptional

including clean drugs tests and constant employment aside from time off due to a horrific

accident.

On April 14, 2019, Cody was hit by a car while on his motorcycle. He was thrown 60

feet and suffered broken bones and other serious injuries all over his body[1]. The accident was

the other driver's fault and it nearly killed Cody. He was initially in a coma due to the extensive

nature of his injuries including head trauma. He spent a total of three weeks in the hospital and

then was released to a rehabilitation facility. He has had numerous surgeries to repair the damage

and continues to need rehabilitation and medical treatment. See Exhibit B. While mostly healed,

Cody is frail from this experience and a shell of his former self. As a person who once prided

himself on how big and strong he got, the accident and its aftermath has been a traumatic

experience for him. Cody is in a great deal of pain most of the time. Rather than take prescribed

pain medication he has turned to mental exercises to try and stem the daily pain. Cody is

maturing from both of these life-changing experiences.

Despite this horrible setback, Cody has been back to work seeking promotions at his job.

He continues to perform exceptionally on pretrial services supervision.

All of Cody's post-offense actions demonstrate he is humbled by this experience and is

not likely to commit a crime again. This crime was the product of immaturity and the desire for

easy money without much thought to the consequences. He describes that once the money was

rolling in, it was addictive.

---

[1] Counsel has provided medical records to the government and probation.

1

Cody has the potential to be very successful in business. The skills he employed to sell

2

steroids on the dark web translate well to lawful enterprises and he will no doubt be able to be a

3

productive member of the community.

4

The attached letters in aid of sentencing demonstrate that Cody has loving friends and

5

family who support him and see the side of him that was not his social media persona. They all

6

show a side of Cody as being a young man who works hard and has learned his lesson. See

7

Attachment C.

8

**THE NEED FOR THE SENTENCE IMPOSED**

9

**A) TO REFLECT THE SERIOUSNESS OF THE OFFENSE AND PROMOTE
RESPECT FOR THE LAW AND PROVIDE JUST PUNISHMENT FOR THE
OFFENSE**

10

11

A prison sentence is not necessary in this case. Cody now has a great deal of respect for

12

the law and has worked hard on his rehabilitation. He realizes that there is no easy money

13

without consequences. The seriousness of this offense is reflected by allowing him to remain in

14

the community with strict conditions of probation supervision. He will not be free, but will have

15

to answer to a probation officer who will require him to stay employed and be responsible. He

16

will have a felony conviction. These are serious consequences for this young man.

17

**B) TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT**

18

Cody has been deterred. His experience has led him to be completely law abiding to

19

never run afoul of the law again. As to general deterrence, steroids are popular in the gym

20

culture. Cody was deep in that culture and had zero idea that he could face the type of prison

21

time he is facing for this crime despite the DOJ press releases about other cases. It's obvious

22

from the open and notorious way he branded and sold steroids that he did not comprehend that

23

he was committing a serious federal crime. Prosecutions and prison sentences have not worked

24

to deter steroids users. A prison sentence in this case will not achieve the goal of deterrence to

25

Cody or to other sellers of steroids as long as men wish to look better.

26

**C) TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE
DEFENDANT**

27

28

Cody has been on pretrial release for 2 years and has performed exceptionally. There is no need to protect the community from him. A five year term of supervision with strict conditions will be sufficient to meet this goal.

### D) TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER

Cody is continuing to suffer from his accident. He may need more surgeries going forward. He has metal in his body and going forward is susceptible to infection. He is also physically vulnerable now whereas before his accident he was a healthy young man. He is in a great deal of pain most of the time. Prison will be extremely difficult for him in a physical sense. He is already excelling at work and does not need prison for vocational training or other kinds of rehabilitation.

### THE KINDS OF SENTENCES AVAILABLE

A five year term of probation is available in this case.

### NEED TO AVOID UNWARRANTED SENTENCING DISPARITY

A sentence of 66 months (the cap for the government pursuant to the plea agreement) would represent a disproportionally higher sentence for Cody's conduct than most defendants sentenced for large scale steroids operations around the country. Exhibit A. to this memorandum is an excel spreadsheet with hyperlinks to documents in federal cases around the country that involve large scale steroids distribution. A CD of the spreadsheet is being provided to the Court so that the Court can see for itself the plea agreements, DOJ press releases and sentencing memoranda in steroids cases around the country. A review of the factors in those cases demonstrates that the sentencing of 66 months for Mr. Boyd would be disproportionally high compared to other similarly situated defendants. Indeed it would represent a higher sentence compared to offenders with far worse conduct than Cody.

As the Court can see, most defendants involved in selling steroids receive a large downward departure or variance from the sentencing guidelines. Exhibit A. The average sentence among 86 defendants involved in large scale federal steroids cases in the last 4 years is only 19 months, with 35 defendants in large scale steroids distribution cases receiving probation.

Only 5 out of 86 defendants were sentenced to more than 66 months.  Many of the cases reflected on the attached charge involve the same enhancements that apply to Cody, including mass marketing, maintaining premises, and manager or supervisor role enhancements.

The comparisons can be tedious, wherein every fact is examined, or more broad, but if the Court takes the time to look at the documents via the hyperlink in Exhibit A, the Court will see that many of the federal steroids cases over the past five years involve far larger operations than Cody's and most of the sentences are well under the sentencing guidelines.

The government consistently argues that the Court should ignore the prohibition against an unwarranted sentencing disparity and cites *United States v. Treadwell*, 593 F.3d 990 (9th Circuit 2010), for that proposition.  *Treadwell* specifically addressed the 2B1.1 guidelines and said "avoiding sentencing disparity on the basis of easily quantifiable values like amount of loss is a factor that the Guidelines are uniquely well-suited to accomplish." *Id* at 1011.   *Treadwell* does NOT stand for the proposition that in steroids cases the Court cannot look to other similarly situated defendants in other cases and their sentences in comparison to the defendant before it.  It further does not stand for the proposition that an in-guidelines sentences outside of the 2B1.1 context is necessarily not one of unwarranted disparity.

Counsel specifically encourages the Court to look at the available documents for the following individuals whose criminal conduct far exceeds that of Cody Boyd and who all received sentences of less than 66 months:   William Fusco (#18 on the attached excel spreadsheet sold steroids on the dark web, possessed multiple firearms and was a leader of multiple employees, received **20 months**); David Arroyo (#21 on the attached spreadsheet involved in a multi-year 16 defendants, international money laundering, received **60 months**); John Williamson (#26 on the attached spreadsheet, involved more than 1.2 million vials of steroids received **48 months**); Michael Peters (#46 on the attached spreadsheet, involved $2.25 million in proceeds, had a prior criminal history, received enhancements for mass marketing, maintaining premises, weapon, distribution to athlete, managerial role, received **36 months**); Donald Vincent (#61 on the attached spreadsheet maintained premises, mass marketed, possessed weapons and involved nearly a million dollars in steroids sales received **36 months**);

**CONCLUSION**

Wherefore, for the reasons stated above and any other that this Court deems just and proper after a review of all of the available materials, Mr. Boyd respectfully requests that he be sentenced to probation. A sentence of probation is one that is sufficient but not greater than necessary to satisfy the goals of 18 U.S.C. 3553(a).

If the Court sentences Mr. Boyd to a term in the Bureau of Prisons, he respectfully requests the opportunity to self-surrender to his designated facility.


DATED: February 14, 2020                    Respectfully submitted,

                                            HEATHER E. WILLIAMS
                                            Federal Defender

                                            */s/ Lexi P. Negin*
                                            LEXI P. NEGIN
                                            Assistant Federal Defender
                                            Attorney for Cody Boyd